# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

BUSHNELL HOLDINGS, INC.,

        Plaintiff,

vs.

AMERICAN OUTDOOR BRANDS, INC.,

        Defendant.

Case No. 2:23-cv-04146

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Bushnell Holdings, Inc. ("Bushnell" or "Plaintiff") makes this Complaint against Defendant American Outdoor Brands, Inc. ("AOB" or "Defendant"), demands a jury trial, and alleges as follows:

## THE PARTIES

1.  Plaintiff Bushnell Holdings, Inc. is a company organized and existing under the laws of the State of Kansas, with its principal place of business at 9200 Cody Street, Overland Park, Kansas 66214.

2.  Defendant American Outdoor Brands, Inc., is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 1800 N, Route Z, Suite A, Columbia, Missouri 65202.

3.     According to AOB's Form 10-K filing for the fiscal year ended April 30, 2023: "We develop and market all our products as well as manufacture some of our electro-optics products at our facility in Columbia, Missouri."[1]

4.     AOB also claims that "[o]ur owned brands include BOG." *Id.*

5.     AOB also claims that "we maintain our principal executive offices at 1800 North Route Z, Suite A, Columbia, Missouri 65202." *Id.* at 7. Columbia, Missouri is in Boone County within the Western District of Missouri.

6.     AOB also claims: "We utilize our websites, including…www.BOGhunt.com…to market our products and to provide a wide range of information regarding our company to customers, consumers, dealers, distributors, investors, and government agencies." *Id.* at 14.

7.     AOB also claims: "We are extremely dependent on our facility in Columbia, Missouri.  The facility houses our principal executive, administrative, financial, sales, marketing, distribution, research and development, assembly, and quality inspection operations." *Id.* at 31. On information and belief, AOB markets, sells, and/or offers for sale the products accused of infringement in this Judicial District.

---

[1] At page 6, available at https://ir.aob.com/static-files/22b6d756-7e2a-4501-ab38-ebe599b3198e (last accessed August 1, 2023).

## JURISICTION AND VENUE

8.     This is an action for patent infringement under the United States Patent Laws 35 U.S.C Code § 271, et seq. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

9.     This Court has personal jurisdiction over AOB because it has its principal place of business in Columbia, Missouri, and therefore may be fairly regarded as at home in this Judicial District.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b). AOB currently has a regular and established place of business in this District, and has committed and continues to commit acts of patent infringement in this District.

## THE PATENTS IN SUIT

### a. The '699 Patent

11.     Plaintiff Bushnell is the owner by assignment of all right, title, and interest in and to United States Patent No. 7,475,699 ("the '699 Patent").

12.     The '699 Patent duly and legally issued in the names of Brooks Johnson and Keith Beam on January 13, 2009.

13.     A copy of the '699 Patent is attached to the Complaint as Exhibit A.

14.     The '699 Patent has not expired and is in full force and effect.

15.    The Abstract of the '699 Patent states "[a] portable and collapsible blind including a flexible cover mounted on a support structure having a plurality of side walls and a top; wherein at least one side wall includes first and second opposite edges, and the opposite edges cooperatively defining a window; an elongated member extending across the opposite edges; and a selective fastener joined to one edge and adjustably joined to the strap, the fastener selectively being fixedly joinable to the elongated member."

### b.    The '124 Patent

16.    Plaintiff Bushnell is the owner by assignment of all right, title, and interest in and to United States Patent No. 7,717,124 ("the '124 Patent").

17.    The '124 Patent duly and legally issued in the names of Brooks Johnson and Keith Beam on May 18, 2010.

18.    A copy of the '124 Patent is attached to the complaint as Exhibit B.

19.    The '124 Patent has not expired and is in full force and effect.

20.    The Abstract of the '124 Patent states "[a] portable and collapsible blind including a flexible cover mounted on a support structure having a plurality of side walls and a top; wherein at least one side wall includes first and second opposite edges, and the opposite edges cooperatively defining a window; an elongated member extending across the opposite edges; and a selective fastener joined to one

edge and adjustably joined to the strap, the fastener selectively being fixedly joinable to the elongated member."

### c. The '725 Patent

21.    Plaintiff Bushnell is the owner by assignment of all right, title, and interest in and to United States Patent No. 7,984,725 ("the '725 Patent").

22.    The '725 Patent duly and legally issued in the names of Brooks Johnson and Keith Beam on July 26, 2011.

23.    A copy of the '725 Patent is attached to the complaint as Exhibit C.

24.    The '725 Patent has not expired and is in full force and effect.

25.    The Abstract of the '725 Patent states "[a] portable and collapsible blind including a flexible cover mounted on a support structure having a plurality of side walls and a top; wherein at least one side wall includes first and second opposite edges, and the opposite edges cooperatively defining a window; an elongated member extending across the opposite edges; and a selective fastener joined to one edge and adjustably joined to the strap, the fastener selectively being fixedly joinable to the elongated member."

## FACTUAL BACKGROUND

26.    Keith Beam began his working career at industrial wholesaler W.W. Grainger. In seven years with Grainger, Mr. Beam moved up the ranks from lead supervisor to branch manager to head of quality of the twelve western states.

5

27.     Around 1987, Mr. Beam met fellow Grainger employee Brooks Johnson. Both were avid bowhunters, and they decided to team up and start their own business selling products for youth archery programs.

28.     While running the archery gear business, Mr. Beam started experimenting with ground blinds and became determined to make the best possible ground blind for hunters. During the day, Beam and Johnson would sell youth archery gear and deliver newspapers. At night, they would sew, assemble, package, and ship their ground blinds and then sleep on the floor of their office.

29.     In 1998, Beam and Johnson hired a rep group to take their ground blinds to archery and sporting goods shops. With greater exposure to the general public, their business started to grow.

30.     By 1999, Beam and Johnson were able to hire manufacturing help and were able to purchase equipment, and their products started to be offered in bigger chain stores and large mail-order houses. By 2001, their ground blinds started being featured in hunting magazines, and the business took off.

31.     As Beam and Johnson continued to innovate and grow their business, they realized that the lack of adjustability in other ground blinds was a significant disadvantage. As hunters themselves, Beam and Johnson understood that hunters, photographers, bird watchers, etc., had a need to remain hidden from view of the wildlife they were observing or pursuing.

32.    But the other ground blinds on the market had multiple drawbacks in this regard: Other blinds had large windows, which allowed game to see the occupants in the blind. Other blinds had windows with a pre-set size and position, which meant the occupant could not enlarge or shrink the window to circumscribe the blind or only provide one small peephole.

33.    After identifying this need in the market, Beam and Johnson set out to design a ground blind with variable windows. With adjustable windows, the location of the occupant's eyes inside the blind and the area to be observed outside the blind could be in a direct line passing through the window.

34.    In 2004, Beam and Johnson began filing patents for collapsible blinds with windows that could be opened in a user-determined amount, in a user-determined location, and in a user-determined configuration. Between 2004 and 2010, Beam and Johnson filed the '699, '124, and '725 patents. By 2011, all three patents were granted.

35.    Beam and Johnson sold their game-changing ground blinds design under the name Double Bull Blinds ("Double Bull"). The name "Double Bull" harkened back to their original business selling youth archery gear.

36.    Double Bull quickly became the hunting industry's leader in premium ground blinds and redefined how hunters thought about ground blinds. Beam and Johnson's passion for hunting and the outdoors community remained the driving

7

force of the business: Customers reported that when they would stop by the Double Bull warehouse to have their blinds repaired, Beam and Johnson would do the repairs themselves and would not charge a dime.

37.    Double Bull's success soon caught the eye of Primos Hunting Calls ("Primos"). Primos, headquartered in Jackson, Mississippi, was the nation's leading designer, manufacturer, and marketer of game calls and accessories to the outdoor hunting industry. Primos recognized that Double Bull's strong brand name, dedication to innovation, marketing expertise, and product quality was second to none.

38.    In 2007, Primos acquired Double Bull. Beam and Johnson remained with Primos as Product Managers focusing on developing new products in the ground blinds category.

39.    A few years later, Double Bull caught the eye of Bushnell. Bushnell, a worldwide leader in outdoor accessories for seventy five years, recognized the innovative work of Beam and Johnson and the strength of the brand they built. Bushnell realized that the companies had synergistic product offerings and shared a great reputation with their retail partners and the hunting consumer.

40.    In 2012, Bushnell acquired Double Bull and its assets, through the acquisition of Primos.

41. Bushnell is bringing this suit to enforce the patents protecting the innovation of Beam and Johnson.

42. AOB operates a variety of brands including BOG, and AOB sells collapsible blinds under the BOG brand, including the Grave Digger, Haymaker, and Prevail blinds (collectively, the "BOG blinds").

43. Defendant's BOG blinds include a "StealthTrac" feature that AOB advertises in promotional materials.[2]

44. Defendant's BOG blinds directly compete with the Double Bull Surroundview DoubleWide blinds and the Double Bull Surroundview Max blinds that are marked with the '699, '124, and '725 Patents.

45. At least as early as October 2022, AOB was made aware through correspondence that the BOG blinds infringe Bushnell's '699 Patent, '124 Patent, and '725 Patent ("the Bushnell Patents"), including through a representative infringement chart demonstrating how the StealthTrac feature in the BOG Grave Digger blind, and common to the accused products, infringes claim 1 of the '699 Patent.

---

[2] *See* BLINDS & CHAIRS/BLINDS/GRAVE DIGGER™, https://www.boghunt.com/blinds-and-chairs/blinds/grave-digger/1147441.html; BLINDS & CHAIRS/HAYMAKER BLIND, BOG, https://www.boghunt.com/blinds-and-chairs/haymaker-blind/1116634.html; BLINDS & CHAIRS/PREVAIL, BOG, https://www.boghunt.com/blinds-and-chairs/prevail/1134435.html; BOG Product Catalog 2023, calameo, https://www.calameo.com/read/00442275379a66a555de0.

## OPERATION OF THE BOG® GRAVE DIGGER™ BLIND

46.    The BOG® Grave Digger™ is a stand-alone camouflage blind that is portable and collapsible and is configured to conceal one or more occupants (e.g., hunters).

47.    For instance, the BOG® website describes that the Grave Digger™ is a "ground blind" with "hunter-friendly" features such as "silent window adjustment fasteners and an asymmetric shape that allows standing height shooting."[3] The BOG® Grave Digger™ package includes a bag for transporting the collapsed blind and has a sheet sewn into the bag that includes "Set-Up" and "Take-Down" instructions.

48.    The BOG® Grave Digger™ includes a flexible cover mounted on a support structure having three side walls and a top. For instance, the image shown below from the box in which the Grave Digger™ is sold shows two side walls and a portion of the top.

---

[3]    BLINDS & CHAIRS/BLINDS/GRAVE DIGGER™, BOG, https://www.boghunt.com/blinds-and-chairs/blinds/grave-digger/grave_digger_M.html



49.     In addition, the box also describes that the blind cover is "600D polyester fabric with UV protection" that is a "camo pattern." The BOG® website also describes that the Grave Digger™ is available in "Realtree® EXCAPE™ and Mossy Oak® Terra™ patterns. *Id.*





50.    The flexible cover is mounted on a tubular metal structure that supports the top and side walls. For example, a tubular X-shaped portion of the support structure that supports one of the side walls and a portion of the top is shown below.



51.    Each one of the side walls includes a window. For instance, the BOG®
website describes that the Grave Digger™ includes "360 degree curtain windows."
*Id.* For each side wall, a portion of the side wall includes first (top) and second
(bottom) opposite edges that cooperatively define a window, as shown below.



52.    As part of its StealthTrac™ window adjustment system, the BOG®
Grave Digger™ includes a plurality of elongated members that are oriented
vertically and permanently secured (e.g., sewn) to the flexible cover of the blind, as
shown below.



53.    In addition, each of the plurality of elongated members extends from their first end at a point beyond the first (top) opposite edge to their second end at a point beyond the second (bottom) opposite edge, as shown below.





54. As part of its StealthTrac™ window adjustment system, the BOG®
Grave Digger™ includes means for moving both of the first (top) and second
(bottom) opposite edges toward each other (e.g., as shown in the "closed"

configuration below), away from each other (e.g., as shown in the "open" configuration below), and in conjunction with each other (e.g., as shown in the "partial" open/closed configuration below). The side wall includes surplus material above and below the window so that the window may be vertically adjusted, and the material above overlaps with the material below when the window opening is closed.



55.    In particular, the BOG® Grave Digger™ includes a clip that holds each of the first (top) and second (bottom) edges at a user selected point along the length of the elongated members. The user-selected point is adjustable by sliding the clip along one of the elongated members, which creates or closes the opening between the two edges. Each of the first (top) and second (bottom) edges has a clip fastener attached at each vertical side to raise and lower the edge.





## OPERATION OF THE BOG® PREVAIL BLIND

56.    The BOG® Prevail is a stand-alone camouflage blind that is portable

and collapsible and is configured to conceal one or more occupants (e.g., hunters).

57.    For instance, the BOG® website describes that the Prevail is a "ground

blind" "that comfortably fits 2 hunters."[4] The BOG® Prevail package includes a bag

---

[4] BLINDS & CHAIRS/PREVAIL, BOG, https://www.boghunt.com/blinds-and-chairs/prevail/1134435.html

for transporting the collapsed blind and has a sheet sewn into the bag that includes "Set-Up" and "Take-Down" instructions.

58.    The BOG® Prevail includes a flexible cover mounted on a support structure having four side walls and a top. For instance, the image shown below from the BOG® website shows two side walls and a portion of the top. *Id.*



59.    In addition, the box also describes that the blind cover is "600D polyester fabric with UV protection" that is a "camo pattern." The BOG® website

also describes that the Prevail is available in "Realtree® EXCAPE™ and Mossy Oak® Terra™ patterns. *Id.*





60.    The flexible cover is mounted on a tubular metal structure that supports the top and side walls. For example, a tubular X-shaped portion of the support structure that supports one of the side walls and a portion of the top is shown below.



61.     Each one of the side walls includes a window. For instance, the BOG®

website describes that the Prevail includes "360 degree curtain windows."*Id.* For

each side wall, a portion of the side wall includes first (top) and second (bottom)

opposite edges that cooperatively define a window, as shown below.



62.   As part of its StealthTrac™ window adjustment system, the BOG®
Prevail includes a plurality of elongated members that are oriented vertically and
permanently secured (e.g., sewn) to the flexible cover of the blind, as shown below.



63.   In addition, each of the plurality of elongated members extends from their first end at a point beyond the first (top) opposite edge to their second end at a point beyond the second (bottom) opposite edge, as shown below.





64. As part of its StealthTrac™ window adjustment system, the BOG®
Prevail includes means for moving both of the first (top) and second (bottom)

opposite edges toward each other (e.g., as shown in the "closed" configuration below), away from each other (e.g., as shown in the "open" configuration below), and in conjunction with each other (e.g., as shown in the "partial" open/closed configuration below). The side wall includes surplus material above and below the window so that the window may be vertically adjusted, and the material above overlaps with the material below when the window opening is closed.



65. In particular, the BOG® Prevail includes a clip that holds each of the first (top) and second (bottom) edges at a user selected point along the length of the elongated members. The user-selected point is adjustable by sliding the clip along one of the elongated members, which creates or closes the opening between the two edges. Each of the first (top) and second (bottom) edges has a clip fastener attached at each vertical side to raise and lower the edge.





## OPERATION OF THE BOG® HAYMAKER BLIND

66. The BOG® Haymaker is a stand-alone camouflage blind that is configured to conceal one or more occupants (e.g., hunters).

67.　For instance, the BOG® website describes that the Haymaker is a "ground blind" that "ensur[es] the perfect shot for finishing waterfowl."[5] The BOG® Haymaker website describes that the Haymaker includes a "snap style cover for easy setup and removal" and an "easy to assemble steel frame." *Id.*

68.　The BOG® Haymaker includes a flexible cover mounted on a support structure having side walls and a top. For instance, the image shown below from the box in which the Haymaker is sold shows two side walls (e.g., where the door and window are located) and a portion of the top (shown with a portion of the top open and closed).

---

[5] BLINDS & CHAIRS/HAYMAKER BLIND, BOG, https://www.boghunt.com/blinds-and-chairs/haymaker-blind/1116634.html





69.     In addition, the website also describes that the blind cover is "600 D Field-Khaki fabric" that "is designed to blend right into hay field or cut crop field setting." *Id*. The fabric cover is also designed with "brush loops" for further camouflaging the blind, as shown below in an image from the website.



70. The flexible cover is mounted on a steel metal frame (structure) that supports the top and side walls. For example, an image of the steel frame from the assembly instructions is shown below.



71. The side walls include a window. For instance, the BOG® website shows that the Haymaker includes a window on the sides. *Id.*



72. For each side wall, a portion of the side wall includes first (top) and second (bottom) opposite edges that cooperatively define a window, as shown below.



73.  As part of its StealthTrac™ window adjustment system, the BOG®

Haymaker includes a plurality of elongated members that are oriented vertically and

permanently secured (e.g., sewn) to the flexible cover of the blind, as shown below.



74.   In addition, each of the plurality of elongated members extends from their first end at a point beyond the first (top) opposite edge to their second end at a point beyond the second (bottom) opposite edge, as shown below.





75. As part of its StealthTrac™ window adjustment system, the BOG® Haymaker includes means for moving both of the first (top) and second (bottom) opposite edges toward each other (e.g., as shown in the "closed" configuration below), away from each other (e.g., as shown in the "open" configuration below), and in conjunction with each other (e.g., as shown in the "partial" open/closed configuration below). The side wall includes surplus material above and below the window so that the window may be vertically adjusted, and the material above overlaps with the material below when the window opening is closed.



76. In particular, the BOG® Haymaker includes a clip that holds each of the first (top) and second (bottom) edges at a user selected point along the length of the elongated members. The user selected point is adjustable by sliding the clip along one of the elongated members, which creates or closes the opening between the two

edges. Each of the first (top) and second (bottom) edges has a clip fastener attached at each vertical side to raise and lower the edge.





## COUNT 1: PATENT INFRINGEMENT OF THE '699 PATENT

77.    Bushnell re-alleges and incorporates by reference the allegations set forth in paragraphs 1-76 above.

78.    AOB, without license or authorization to do so, has infringed one or more claims of the '699 Patent, and continues to infringe, literally or under the doctrine of equivalents, one or more claims of the '699 Patent by making, using, selling, offering for sale, and/or importing the BOG Blinds within the United States, in violation of 35 U.S.C. § 271(a).

79.    AOB's BOG Blinds directly infringe at least claims 1 and claim 3 of the '699 Patent.

80.    For example, the BOG Blinds infringe claim 1 of the '699 Patent because each is "a blind" (*see, e.g.,* paragraphs 47, 57, 68, above), and each is comprising: (a) "a flexible cover mounted on a support structure having at least one side wall and a top; wherein at least a portion of the at least one side wall includes first and second opposite edges, and the first and second opposite edges cooperatively define a window" (*see, e.g.,* paragraphs 48-51, 58-61, 68-72, above); and (b) "a plurality of elongated members extending from a point beyond the first opposite edge to a point beyond the second opposite edge, the elongated members being permanently secured to the flexible cover" (*see, e.g.,* paragraphs 52-53; 62-63; 73-74, above); and (c) "means for moving either one or both of the first and

second opposite edges toward each other, away from each other and in conjunction with each other, the means for moving including a clip to hold each of the first and second opposite edges at a user selected point adjustable along the length of the elongated members." (*see, e.g.,* paragraphs 54-55, 64-65, 75-76, above).

81.    As another example, the BOG Blinds infringe claim 3 of the '699 Patent because each is a "camouflage blind" (*see, e.g.,* paragraphs 46-49, 56-59, 66-69, above); comprising: (a) "a flexible cover mounted on a support structure having at least one side wall and a top; wherein a portion of the at least one side wall includes first and second opposite edges, the first and second opposite edges are top and bottom edges, and the first and second opposite edges cooperatively define a window" (*see, e.g.,* paragraphs 48-51, 58-61, 68-72, above); and (b) " at least one elongated member extending from a point beyond the first opposite edge to a point beyond the second opposite edge, the at least one elongated member being permanently secured to the flexible cover" (*see, e.g.,* paragraphs 52-53, 62-63, 73-74, above); and (c) "means for moving either one or both of the first and second opposite edges toward each other, away from each other and in conjunction with each other, the means for moving including fastening means for holding each of the first and second opposite edges at a user selected point adjustable along the length of the at least one elongated member; wherein the fastening means comprises a clip." (*see, e.g.,* paragraphs 54-55, 64-65, 75-76, above).

82.    Defendant's infringement of the '699 Patent has been, is, and continues to be willful, including Defendant's infringement of at least claim 1 as described at ¶ 80.

83.    Plaintiff has been and will continue to be irreparably harmed by Defendant's infringing acts, requiring the entry of a permanent injunction to prevent Plaintiff's further infringement of the '699 Patent.

84.    As a direct and proximate consequence of Defendant's infringement of the '699 Patent, Plaintiff has suffered damages in an amount not yet determined for which Plaintiff is entitled to relief.

## COUNT 2: PATENT INFRINGEMENT OF THE '124 PATENT

85.    Bushnell re-alleges and incorporates by reference the allegations set forth in paragraphs 1-84 above.

86.    AOB, without license or authorization to do so, has infringed one or more claims of the '124 Patent, and continues to infringe, literally or under the doctrine of equivalents, one or more claims the '124 Patent by making, using, selling, offering for sale, and/or importing the BOG Blinds within the United States, in violation of 35 U.S.C. § 271(a).

87.    AOB's BOG Blinds directly infringe at least claims 1 and 8 of the '124 Patent.

88. For example, the BOG Blinds infringe claim 1 of the '124 Patent because each is a "camouflage blind" (*see, e.g.,* paragraphs 46-49, 56-59, 66-69, above), and each is comprising: "a flexible cover mounted on a support structure having at least one side wall and a top; wherein a portion of the at least one side wall includes first and second opposite edges, and the opposite edges cooperatively define a window" (*see, e.g.,* paragraphs 48-51, 58-61, 68-72, above); and "at least one elongated member attached to the at least one side wall at a first point beyond the first opposite edge and at a second point beyond the second opposite edge" (*see, e.g.,* paragraphs 52-53, 62-63, 73-74, above); and "wherein the at least one elongated member is fastened to the at least one side wall at a location between the window and the first point and at a location between the window and the second point in a manner that allows each one of the first and second opposite edges to move toward and away from the other one of the first and second opposite edges to adjust one or more of the size or position of the window; wherein the first and second opposite edges are top and bottom edges." (*see, e.g.,* paragraphs 54-55, 64-65, 75-76, above).

89. As another example, the BOG Blinds infringe claim 8 of the '124 Patent because each is "a blind" (*see, e.g.,* paragraphs 47, 57, 67, above), and each is comprising: "a cover comprising at least one side wall, the at least on side wall comprising: a first edge; a second edge; a first fastener attached to the first edge; a second fastener attached to the second edge" (*see, e.g.,* 48-51, 58-61, 68-72, above);

and "at least one elongated member; wherein the first and second fasteners slidably engage the at least one elongated member to create an opening in the at least one side wall between the first edge and the second edge; wherein the at least one elongated member is oriented vertically and comprises a first end and a second end, and wherein the first end is attached to the at least one side wall above the first edge and the second end is attached to the at least one side wall below the second edge" (*see, e.g.,* paragraphs 52-53, 62-63, 73-74, above); and wherein the blind is a stand-alone structure that is configured to conceal one or more occupants and the blind is portable and collapsible." (*see, e.g.,* paragraphs 46, 56, 66, above).

90.    Defendant's infringement of the '124 Patent has been, is, and continues to be willful, including Defendant's infringement of at least claim 8 as described at ¶ 88.

91.    Plaintiff has been and will continue to be irreparably harmed by Defendant's infringing acts, requiring the entry of a permanent injunction to prevent Plaintiff's further infringement of the '124 Patent.

92.    As a direct and proximate consequence of Defendant's infringement of the '124 Patent, Plaintiff has suffered damages in an amount not yet determined for which Plaintiff is entitled to relief.

## COUNT 3: PATENT INFRINGEMENT OF THE '725 PATENT

93.    Bushnell re-alleges and incorporates by reference the allegations set forth in paragraphs 1-92 above.

94.    AOB, without license or authorization to do so, has infringed one or more claims of the '725 Patent, and continues to infringe, literally or under the doctrine of equivalents, one or more claims the '725 Patent by making, using, selling, offering for sale, and/or importing the BOG Blinds within the United States, in violation of 35 U.S.C. § 271(a).

95.    AOB's BOG Blinds directly infringes at least claim 12 of the '725 Patent.

96.    For example, the BOG Blinds infringe claim 12 of the '725 Patent because each is "a blind" (*see, e.g.,* paragraphs 47, 57, 67, above), comprising "at least one side wall" and "a window defined in the at least one side wall by a top edge and an opposing bottom edge" (*see, e.g.,* paragraphs 48-51, 58-61, 68-72, above); and "wherein the at least one side wall includes surplus material above the window and surplus material below the window, the surplus material both above the window and below the window being manipulable to adjust vertically the position of the window" (*see, e.g.,* paragraphs 54-55, 64-65, 75-76, above).

97. Defendant's infringement of the '725 Patent has been, is, and continues to be willful, including Defendant's infringement of at least claim 12 as described at ¶ 96.

98. Plaintiff has been and will continue to be irreparably harmed by Defendant's infringing acts, requiring the entry of a permanent injunction to prevent Defendant's further infringement of the '725 Patent.

99. As a direct and proximate consequence of Defendant's infringement of the '725 Patent, Plaintiff has suffered damages in an amount not yet determined for which Plaintiff is entitled to relief.

## DEMAND FOR JURY TRIAL

100. Bushnell respectfully demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Bushnell requests entry of judgment in its favor and against AOB as follows:

a) Judgment that AOB has directly infringed one or more claims of Bushnell's Patents;

b) An award of damages to compensate Bushnell for AOB's infringement, including damages pursuant to 35 U.S.C. § 284, as well as prejudgment and post-judgment interest;

c)     An award of costs and expenses in this action, including an award of Bushnell's reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

d)     A permanent injunction restraining and enjoining AOB, and its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with AOB who receive actual notice of the order by personal service or otherwise, from any further sales or use of their infringing products and/or services and any other infringement of the Bushnell Patents;

e)     A finding that AOB has willfully infringed and is willfully infringing one or more claims of one or more of the Bushnell Patents;

f)     A finding that this case is an exceptional case, awarding treble damages due to AOB's deliberate and willful conduct, and ordering AOB to pay Bushnell's costs of suit and attorneys' fees; and

g)      For such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

Dated:  August 1, 2023                      Respectfully submitted,

By: */s/ Jordan T. Bergsten*
Jordan T. Bergsten
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
P: 816-474-6550
F: 816-421-5547
jbergsten@shb.com
***Attorney for Plaintiff Bushnell Holdings, Inc.***